THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
GILBERT MONOSON, Defendant-Appellee.

First District (5th Division)    No. 78-561

Opinion filed August 10, 1979.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Wendy S. Paul, Assistant State's Attorneys, of counsel), for the People.

George J. Cotsirilos and Robert M. Stephenson, both of George J. Cotsirilos & Associates, Ltd., of Chicago, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

This is an appeal by the State from an order suppressing electronic surveillance evidence purportedly obtained under the authority of sections 108A—1 et seq. of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 108A—1 et seq.) (hereinafter the Illinois Eavesdropping Act). The sole issue is whether the trial court properly suppressed two tapes of electronically overheard and recorded conversations. We affirm the trial court. The pertinent evidence follows.

On July 22, 1976, Raymond Stockholm, a law enforcement officer employed by the Cook County State's Attorney's Office, executed an application for a court order authorizing the use of an eavesdropping device to overhear and record conversations between George Carpin and defendant between 12:10 p.m., July 22, and 10 a.m., July 26, 1976. The application stated under oath Stockholm's belief that the felonies of bribery and official misconduct were being or would be committed. Stockholm's application further alleged:

"GEORGE CARPIN, owner of G.E.C. Industries, a steel processing plant located at 422 Mercantile, Wheeling, Illinois, is in violation of Wheeling Ordinances which require either a firewall or a sprinkling system in the plant. If George Carpin halts production in his plant he will lose his contract with General Motors. The Trustees of the Village of Wheeling voted down the variance in June of 1976. on July 21, 1976, Gilbert Monoson told George Carpin that if George Carpin would give him (Gilbert Monoson) a $10,000 unsecured, interest free loan, Gilbert Monoson told George

Carpin that he (Monoson) will do everyting [sic] he (Monoson) can do to get the needed zoning variance."

The application did not reveal how Stockholm had come into possession of the facts stated in the application. This document was submitted to the authorizing judge together with a form captioned "State's Attorney's Authorization for Application for Approval of Use of Eavesdropping Device" signed by Assistant State's Attorney Nicholas Iavarone, who stated that he, knowing of Carpin's consent to the electronic eaves-dropping, "received Bernard Carey's authorization and consent in a phone call at 9:43 a.m. on July 22, 1976." The form was signed by Iavarone at 10:02 a.m. Also tendered to the authorizing judge was a form entitled "Consenting Party," signed by Stockholm. This form stated that Stockholm had received consent from Carpin to have conversations between Carpin and defendant recorded. Stockholm indicated on the form, however, that he received Carpin's consent at 10:07 a.m. The form was signed by Stockholm at 10:10 a.m. The authorizing judge signed an order allowing the use of the eavesdropping device as requested in the application. A conversation between Carpin and defendant was later overheard and recorded.

On July 26, Stockholm applied for an extension of the July 22 order until 10 a.m. on July 28, 1976. The application stated, in pertinent part:

"The following results have so far been obtained: The target, Gilbert Monoson, did meet George Carpin at the offices of GEC Industries in Wheeling, Illinois, and requested a $10,000.00 unsecured loan in return for which Monoson would do his best to help Carpin receive an occupancy permit.

＊ ＊ ＊

It is necessary to extend the order ＊ ＊ ＊ because Gilbert Monoson will be at the zoning meeting on July 26, 1976. This is the meeting where Monoson agreed to do "his best" to help Carpin receive his permit in return for a $10,000 loan. Carpin will meet Monoson before and after this meeting.

＊ ＊ ＊

Based on the following facts, [the State] ＊ ＊ ＊ request[s] that the order for the use of an eavesdropping device not terminate automatically when the above conversation is overheard and/or recorded because [it has] reasonable grounds to believe that additional conversations of the same type may occur: After the zoning committee meeting on July 26, 1976, Gilbert Monoson will probably arrange for a meeting to receive the $10,000.00."

Similar to the July 22 application, Stockholm signed as the applicant, but the July 26 application was not made under oath. This application was

submitted to the authorizing judge with a form for an "Extension of Order for Use of an Eavesdropping Device," signed by Iavarone. In the form it was stated that Iavarone, knowing of Carpin's consent to the electronic eavesdropping, had received consent and request of State's Attorney Carey by phone at 9:31 a.m. on July 26 to petition the court for an extension. This form was signed by Iavarone at 9:55 a.m. In addition, a form entitled "Consenting Party," signed by Assistant State's Attorney Crystal, was submitted with the application. The document stated that Carpin gave his consent to have "the above conversation recorded at 9:36 a.m." on July 26. This form was signed by Crystal at 9:56 a.m. The authorizing judge signed an order allowing the extension. Subsequently, a second conversation between Carpin and defendant was overheard and recorded.

Defendant was thereafter charged in a five-count indictment in July 1977 with three counts of bribery and two counts of official misconduct. Ill. Rev. Stat. 1977, ch. 38, pars. 33—1 and 33—3.

Defendant's counsel was granted permission to listen to both tapes. Before trial, defendant filed a motion to suppress the contents of the two conversations that were electronically overheard and recorded. He alleged (1) that the July 22 and 26 orders of authorization were invalid because examination of the applications revealed that Carpin's consent was not received until after the purported authorizations of State's Attorney Carey; (2) that concerning the July 22 application, the State's Attorney's authorization form, showing Carpin's consent, was executed before Carpin actually consented and was, therefore, defective; (3) that the two applications were insufficient for failure to set forth facts that would satisfy the standards of "reasonable cause" or "probable cause," which terms under Illinois law are synonymous, in that the applications did not contain facts regarding the source of the information recited or of the circumstances from which Stockholm could conclude that the offenses of bribery or official misconduct were being or were about to be committed; and (4) that even if the "reasonable cause" standard means something less than "probable cause," the facts alleged in the original application failed to establish reasonable cause for believing that defendant was committing or was about to commit the offenses of bribery or official misconduct.

In an effort to correct the alleged defect with regard to the time of Carpin's consent to the applications, the State filed two stipulations. The stipulations stated that Carpin consented to the electronic eavesdropping on July 22 prior to 10:02 a.m.; that Iavarone informed the State's Attorney of Carpin's consent on that date at approximately 10:02 a.m.; that Carpin consented to the electronic eavesdropping on July 26 prior to 9:55 a.m.; and that Iavarone informed State's Attorney Carey of Carpin's consent on

that date at approximately 9:55 a.m. Thus, the stipulations appear to contradict Iavarone's statements on the supporting papers. Nevertheless, the motion to suppress was granted.

In granting the motion, the trial court filed a written opinion with the order. Attached as appendices to the opinion are a copy of the original legislative bill before the exercise of then Governor Walker's amendatory veto and a letter from Governor Walker to the House of Representatives in which he explained his reasons for recommending changes in the original bill as submitted to him. It was the trial court's opinion that both the taped conversations authorized by the July 22 and 26 court orders were electronically overheard and recorded in violation of the Illinois Eavesdropping Act (Ill. Rev. Stat. 1977, ch. 38, par. 108A—1 *et seq.*).

OPINION

The State contends that the trial court improperly suppressed the results of the electronic eavesdropping which was authorized by the July 22 and 26 court orders. Specifically, the State argues that Stockholm's applications of July 22 and 26 established "reasonable cause" to warrant authorization of the eavesdropping. We cannot agree.

Defendant argues that both the July 22 and 26 court orders were issued in violation of the Illinois Eavesdropping Act. The trial court sustained the motion to suppress for the reason that the application did not contain facts and circumstances establishing reasonable cause to believe defendant was committing, had committed, or was about to commit the felonies of bribery and official misconduct. Because we concur with this reason, we find. it unnecessary to discuss questions involving the effect of the State's apparent failure to comply with the procedural provisions of the statute as evidenced by the supporting documents indicating that Carpin gave his consent after State's Attorney Carey authorized the application and the curative effect of the two stipulations filed by the State.

■■ In *People v. Porcelli* (1974), 25 Ill. App. 3d 145, 149, 323 N.E.2d 1, 4, this court, in construing the eavesdropping statute that is the predecessor of the present statute (Ill. Rev. Stat. 1971, ch. 38, par. 14—1 *et seq.*), stated that the statutory restraints on electronic eavesdropping and the mandate of our State constitution "demand the strict construction of the statute and coordinately, the equally strict scrutiny of all purported consents and requests, so that in Illinois citizens may be safeguarded from promiscuous governmental surveillance, civilian snooping or other unreasonable intrusions into their privacy." (Accord, *People v. Marlow* (1976), 39 Ill. App. 3d 177, 350 N.E.2d 215.) Under the earlier statute, the State's Attorney had the sole responsibility for determining when the use of eavesdropping devices was proper. The present statute provides for

judicial supervision over the use of eavesdropping devices. (See Ill. Rev. Stat. 1977, ch. 38, pars. 108A—1 through 108A—6.) We believe that the standard of "strict construction" as set forth in *Porcelli* is applicable to the new statute.

The Illinois Eavesdropping Act provides, in relevant part:

"The State's Attorney may authorize an application to a circuit judge for, and such judge may grant in conformity with this Article, an order authorizing or approving the use of an eavesdropping device by a law enforcement officer or agency having the responsibility for the investigation of any felony under Illinois law where any one party to a conversation to be monitored, or previously monitored in the case of an emergency situation as defined in this Article, has consented to such monitoring." Ill. Rev. Stat. 1977, ch. 38, par. 108A—1.

"The judge may authorize or approve the use of the eavesdropping device where it is found that:

(a) one party to the conversation has or will have consented to the use of the device;

(b) there is reasonable cause for believing that an individual is committing, has committed, or is about to commit a felony under Illinois law;

(c) there is reasonable cause for believing that particular conversations concerning that felony offense will be obtained through such use; and

(d) for any extension authorized, that further use of a device is warranted on similar grounds." Ill. Rev. Stat. 1977, ch. 38, par. 108A—4.

The statute requires that the State's Attorney apply for a court order approving the use of an eavesdropping device. (Ill. Rev. Stat. 1977, ch. 38, par. 108A—1.) In order to obtain judicial approval of an eavesdropping device, the applicant must state under oath: "(a) details as to the felony that has been, is being, or is about to be committed; (b) a description of the type of communication sought to be monitored; (c) the identity of the party to the expected conversation consenting to the use of the eavesdropping device; [and] (d) the identity of the person, if known, whose conversations are to be overheard by the eavesdropping device * * *." (Ill. Rev. Stat. 1977, ch. 38, par. 108A—3(2).) Furthermore, the judge may authorize the use of the eavesdropping device where it is found, among other things, that there is reasonable cause for believing that an individual is committing, has committed, or is about to commit a felony under Illinois law and there is reasonable cause for believing that particular conversations concerning that felony will be obtained through such use. The State's bases for applications for authorization to utilize

electronic eavesdropping were the offenses of bribery and official misconduct. In order to charge the offense of bribery, the State must set forth that the alleged acts were done "to influence the performance of any act related to the employment or function of any public officer, public employee, juror or witness" and that the "property or personal advantage" is of a type that defendant is not authorized to accept. (Ill. Rev. Stat. 1977, ch. 38, par. 33—1.) The Illinois official misconduct statute also applies solely to a "public officer or employee." Ill. Rev. Stat. 1977, ch. 38, par. 33—3.

■■ The initial application of July 22 does not state (1) that defendant was a public official or employee; (2) that defendant was unauthorized to accept an unsecured loan; or (3) that the unsecured loan was to influence the performance of any act related to defendant's employment or function as a public official or employee. There is no statement in the application that the receipt of the alleged loan was to influence an official act of any other public official or employee. Moreover, there is no allegation that the alleged loan was in return for an illegal act or was not authorized by law. On the face of the application, defendant appears to be simply a citizen.

The State maintains that the requisite standard of "reasonable cause" can be found in the affidavit by inference and assumption and that a common sense reading of the initial affidavit supports the authorizing judge's initial order of authorization. We find this argument to be without merit since the record is devoid of any support for this contention.

■■ Similarly, the July 26 order authorizing the use of electronic eavesdropping was defective. Stockholm's July 26 application fails to state that defendant was a public official or employee or that defendant was a public official or employee or that defendant was unauthorized by law to accept an unsecured loan. Furthermore, the application neither sets forth that the unsecured loan was for the purpose of influencing the performance of any act related to defendant's employment or function as a public official, nor does it state that receipt of the alleged loan by defendant was to influence an official act of another public official or employee. The application, therefore, is lacking any particulars establishing a belief that the offenses of bribery or official misconduct had been, were being, or would be committed. Additionally, the July 26 application alleged that as a result of the July 22 order, a conversation was recorded between Carpin and defendant which established a basis for requesting the July 26 extension. Accordingly, the electronic eavesdropping resulting from the second order was properly suppressed by the trial court as being based on the prior illegal order. *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.

The State, however, argues that the exclusionary rule of *Wong Sun*

8

has no application to evidence which has an origin independent of the alleged violation and relies heavily on the "independent source" doctrine enunciated by *Silverthorne Lumber Co. v. United States* (1920), 251 U.S. 385, 64 L. Ed. 319, 40 S. Ct. 182, and *People v. Lynumn* (1960), 21 Ill. 2d 63, 171 N.E.2d 17. It contends that the order of July 26 was not a product of, and in fact had nothing to do with the results of the prior eavesdropping. We find this argument to be untenable. Only the July 22 and 26 applications, and attendant documents, were before the authorizing judge. These documents fail to state facts from which one could conclude that Carpin could or did tell Stockholm the substance of his conversations with defendant. There was no evidence of what Carpin could or did tell Stockholm before Stockholm applied for the July 26 order. Moreover, no evidence was adduced before the trial court from which he could conclude that the order of July 26 would have been issued by the authorizing judge regardless of whether or not any results had been obtained under the July 22 order.

The State admits the July 26 application was unsworn but maintains that this violation of the statute is not fatal since the application, as well as the other supporting documents, were in substantial compliance with the eavesdropping statute. Again we disagree. The spirit and purpose of the eavesdropping statute are not only to ensure that all eavesdropping is subject to judicial supervision but to prevent unwarranted intrusions into an individual's privacy. This purpose would be thwarted by an unsworn application because the function of the oath is to safeguard against the possibility of perjured statements and provide a recourse for the injured citizen whose rights have been violated by such perjured statements. (See *People v. Young* (1972), 4 Ill. App. 3d 602, 279 N.E.2d 392.) Likewise, Federal law stresses that procedural steps provided in the Federal eavesdropping statute require "strict adherence." (*United States v. Kalustian* (9th Cir. 1975), 529 F.2d 585, 588.) We conclude that under the doctrine of strict construction set forth in *People v. Porcelli* (1974), 25 Ill. App. 3d 145, 323 N.E.2d 1, the lack of an oath on the July 26 application is a substantial defect rendering the application void.

The State further contends that the phrase "reasonable cause" used in section 108A—4 of the Illinois Eavesdropping Act, means something less than "probable cause," but that the applications even meet the standard of "probable cause." The State points out that the Illinois Eavesdropping Act is patterned after title III of the Federal Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C. §2510 *et seq.* (1976)). However, while the Federal statute requires that "there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense" (18 U.S.C. §2518(3)(a)), the Illinois act omits the term

"probable cause" and uses the phrase "reasonable cause," thus intending to mean something different.

The trial court observed in its opinion that House Bill 212, as originally drafted, used the phrase "probable cause" throughout. When the bill reached Governor Walker, however, he exercised his amendatory veto. He recommended changes, and among the changes, deleted the phrase "probable cause" replacing it with "reasonable cause." In doing so the Governor explained in a letter to the House of Representatives the term "probable cause" should be changed to "reasonable cause" because the term "probable cause" may be construed too technically; it might be construed to require the standard of proof necessary to issue a conventional search warrant * * *. This recommended change was then accepted by the legislature and the bill became law. There was no discussion by the Governor or in legislative comments of what was intended by the phrase "reasonable cause."

The State posits that the legislature, by accepting the recommended change, indicated an intention to establish a construction of section 108A—4(b) that "reasonable cause" means something less than "probable cause." However, we have concluded that because of the substantial deficiencies in both the July 22 and 26 applications, there was not reasonable cause for believing that defendant had committed, was committing, or would commit the felonies of bribery or official misconduct. We, therefore, need not determine whether the term "reasonable cause" contained in the statute means something different than the phrase "probable cause."

■■ We note, however, that under Illinois law, the phrases "probable cause" and "reasonable cause" have been used interchangeably and have been held to be legally synonymous phrases. (Ill. Rev. Stat. 1977, ch. 38, par. 107—2(b),(c); *People v. Wright* (1974), 56 Ill. 2d 523, 528-29, 309 N.E.2d 537, 540; *People v. Hinton* (1977), 45 Ill. App. 3d 925, 927, 360 N.E.2d 451, 452; *People v. Lawson* (1976), 36 Ill. App. 3d 767, 770, 345 N.E.2d 41, 43.) When a statute employs words which have well-known legal significance, courts will, absent any contrary expression, assume that the legislature intended the words to have that meaning. (*Department of Public Works & Buildings v. Wishnevsky* (1972), 51 Ill. 2d 550, 283 N.E.2d 872; *City of Chicago v. Cecola* (1977), 56 Ill. App. 3d 143, 371 N.E.2d 955.) In addition, where the statute was enacted after judicial opinions on the matter, it must be presumed that the legislature acted with knowledge of the prevailing case law. (*Nardi v. Segal* (1967), 90 Ill. App. 2d 432, 234 N.E.2d 805; *Waesch v. Elgin, Joliet & Eastern Ry. Co.* (1962), 38 Ill. App. 2d 56, 186 N.E.2d 369.) Moreover, generally a statute should not be construed to effect a change in the settled law of the State unless its terms

clearly require such construction. (*People v. Bernette* (1964), 30 Ill. 2d 359, 197 N.E.2d 436.) No express legislative direction exists regarding the meaning of the phrase "reasonable cause." In such a circumstance, it must be presumed that the legislature acted with knowledge of the prevailing case law; and this, therefore, suggests that "reasonable cause" means the same as "probable cause." See *Reeves v. Eckles* (1966), 77 Ill. App. 2d 408, 222 N.E.2d 530.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.