THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LELAND WRESTLER, Defendant-Appellant.

Third District   No. 3—83—0224

Opinion filed January 6, 1984.

148

Edward R. Danner, of Malmgren Law Offices, Ltd., of Canton, for appellant.

Joan C. Scott, State's Attorney, of Lewistown (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

Defendant, Leland Wrestler, was charged with three counts of indecent liberties with a child (Ill. Rev. Stat. 1981, ch. 38, par. 11—4(a)) and tried by a jury in the Fulton County circuit court. He was found guilty on all three counts and was sentenced to serve concurrent terms of four, eight and 12 years imprisonment for the three offenses. In this appeal, the defendant raises two primary issues: (1) whether the trial court erred in denying the defendant's motion to suppress three tape-recorded telephone conversations and one face-to-face conversation between the defendant and the child victim; and (2) whether the defendant's concurrent terms of imprisonment are excessive given the testimony adduced on defendant's behalf at his sentencing hearing. We affirm.

The facts underlying the defendant's three convictions of indecent liberties with a child are not, for the most part, in dispute. They need not be related except as necessary to explain our determination of the issues. Out of deference to the minor victim, her name will not appear in this opinion. She will be referred to, instead, as "the child."

On January 27 and 28, 1982, the child and her mother met with Sergeant Daniel P. Daly of the Fulton County Sheriff's Department and then assistant State's Attorney of Fulton County, Joan C. Scott. The child provided detailed accounts of three of the occasions of sexual intercourse between herself and the defendant, who was age 59 at the time of his trial. The first instance of intercourse had occurred during early summer of 1979, when the child was 10 years old; the second, on the occasion of the celebration of her 11th birthday in March 1980; and the third, in the latter part of December 1981, when she was 12 years old. The child estimated that she had had intercourse with the defendant from 20 to 25 times between the summer of 1979 and December of 1981.

Based upon the information related during these meetings, Sergeant Daly prepared an application for an eavesdropping order. The

three-page application summarized the child's detailed accounts of the three acts of intercourse, including the fact that the defendant had applied contraceptive cream to the child's vagina prior to intercourse on the last two occasions described. Daly expressed his opinion that a telephone call by the child to the defendant "could result in discussion and admissions by [the defendant] of his participation in indecent liberties with a child" which would constitute evidence of the crime. Accordingly, Daly requested "that an order for the use of an eavesdropping device be used [sic] to record any and all phone conversations with [the defendant] from January 29, 1982 at 2:00 p.m. until February 9, 1982 at 2:00 p.m. between *** [the child] and [the defendant]."

At 2:35 p.m. on January 29, 1982, Judge Wilhelm entered an order for use of an eavesdropping device, finding that "reasonable grounds *** to believe that the felony of indecent liberties with a child *** [had] been committed by [the defendant], and *** that there [was] reasonable cause to believe that the particular conversations specified in the application" would occur during the period specified, and that the child and her mother consented to the recording and/or overhearing of such conversations. The order granted authority to Daniel P. Daly. Finally, the order specified that it was "to terminate as soon as said conversations are recorded."

Pursuant to the eavesdropping order, telephone conversations were recorded in the evening of January 29 and again on January 31, 1982. In the first conversation, the child told the defendant that she had missed her period and she thought that she might have become pregnant as a result of sexual relations they had had in December. She asked him if he thought the contraceptive cream had been effective. He said he was sure it had been. He was "very, very" concerned about her, but indicated that he could not speak freely because of the presence of other persons in the room where he was speaking.

During the second conversation, the child said she still thought she was pregnant and was scared. The defendant offered to meet her to talk the next day, but again said that he was not free to speak over the telephone. He indicated that "Mom" was in the room. The child asked how old the cream was that he had used. He said it was not old.

On February 1, 1982, Deputy Curtis Pierce of the Fulton County Sheriff's Department filed a supplemental application for use of an eavesdropping device in which he summarized the recorded telephone conversations and concluded that the defendant was inhibited about discussing sexual matters with the child when he was in the presence of other persons. Pierce requested that the prior order remain in ef-

fect and that a supplemental order be issued authorizing the use of an eavesdropping device to record face-to-face conversations between the child and the defendant during the remainder of the period for which the prior order was in effect. An order granting the supplemental application was approved by Judge Wilhelm at 1:15 p.m. on February 1, 1982. That order specifically provided that it was to terminate as soon as the particular face-to-face conversations were recorded.

Then, around 2:30 p.m. of February 1, 1982, a third telephone call was placed by the child to the defendant and recorded. She told him she was home alone until 6 p.m. The defendant stated that he would stop by to talk to her and that "the things she was worrying about" were "all taken care of." An hour later the defendant appeared at the child's home and their conversation was there recorded.

The defendant produced an early pregnancy test kit and explained to the child that she was to secretly collect a sample of her urine the next morning and tell her mother that she was sick so that she would not have to go to school. Then, when everyone in the household had left, the defendant would come by her home and conduct the pregnancy test. The defendant further explained that if the results indicated pregnancy he was going to take her to an abortion clinic in Peoria and return her to her home, nonpregnant, by the time the school bus reached her house after school. The defendant acknowledged that he knew he was the only person who had ever "bothered" her. He told the child that her mother would put her in a "home" if she told her mother about the pregnancy; that rather than go to prison, the defendant would take his own life if she told her mother she was pregnant by him; that as far as the defendant was concerned, the child "belonged" to him, not to her mother; and that they would never again have sex together. The defendant then said that he was going to change his own and his wife's wills to provide for her.

As the defendant left, he was met by Deputy Pierce, who had overheard the face-to-face conversation from the adjoining apartment. Pierce arrested the defendant and removed the pregnancy test kit from his person.

Prior to trial the defendant moved to suppress all of the recorded conversations on grounds that they were illegally obtained. The motion was denied, as was a subsequent motion *in limine* advanced on the same grounds. The recordings were played to the jury during the State's case-in-chief over defendant's objection.

In his appeal, the defendant contends that the admission into evidence of the tape recorded conversations was error for several reasons. Initially, defendant asserts that Judge Wilhelm's first order ille-

gally authorized the use of an eavesdropping device for 11 days, one day in excess of the statutory maximum. (See Ill. Rev. Stat. 1981, ch. 38, pars. 108A—5(b), 108A—9(a)(2).) While the defendant's point is well taken, we do not believe that the trial court, to whom the point was first put, erred in rejecting this argument.

When the one-day discrepancy was brought to the court's attention, the prosecutor explained that she had referred to a calendar which provided space or lines for five, rather than six, calendar weeks per month. Consequently, when January 31 fell on a Sunday, as it did in 1982, her calendar displayed the dates in question as follows:

| 5th Calendar week: (January) | 24/31 | 25 | 26 | 27 | 28 | 29 | 30 |
|---|---|---|---|---|---|---|---|
| 1st Calendar week: (February) | | 1 | 2 | 3 | 4 | 5 | 6 |
| 2nd Calendar week: (February) | 7 | 8 | 9 | 10 | 11 | 12 | 13 |

In counting out the 10-day statutory period, the prosecutor inadvertently missed the 31st of January. The trial court apparently found this explanation credible under the circumstances. The court held that the State's error was technical and did not invalidate the order since it was actually in effect for less than 10 days.

In urging a reversal of the denial of defendant's motion to suppress on the basis of the technical error, the defendant relies solely upon the doctrine of strict construction in applying the eavesdropping statute. (*People v. Monoson* (1979), 75 Ill. App. 3d 1, 393 N.E.2d 1239.) Interestingly, while *Monoson* specifically approves the "strict construction" standard for reviewing eavesdropping orders, the court there skirted the defendant's claims of "procedural" defects and applied the strict construction standard only to substantive defects in the content of the State's applications for use of eavesdropping devices and affirmed the trial court's order of suppression on the substantive grounds. The court did not reach the defendant's additional contention that the consenting party had consented to the use of the eavesdropping device *after* the State's Attorney authorized the application for an eavesdropping order. *People v. Monoson* (1979), 75 Ill. App. 3d 1, 5, 393 N.E.2d 1239, 1243.

Subsequent decisions in which technical, or procedural, defects in eavesdropping applications have been considered by reviewing courts indicate that the rule of strict construction may not require suppression where the legislative intent of the eavesdropping act is not im-

paired and where no possibility of prejudice to the defendant is stated. (*People v. Sylvester* (1980), 86 Ill. App. 3d 186, 407 N.E.2d 1002; *People v. Pitchford* (1983), 115 Ill. App. 3d 164, 450 N.E.2d 349.) Thus, judgment granting motions to suppress were reversed where the claimed defect was failure to notarize or incorporate by reference the State's Attorney's authorization form into the application (*Sylvester* (violation of Ill. Rev. Stat. 1977, ch. 38, par. 108A—3(a)(1))); and where an eavesdropping order was signed by the judge more than an hour after the beginning of the period for which use of an eavesdropping device was authorized (*Pitchford*).

■■ In our opinion, the 11-day period authorized by Judge Wilhelm on January 29, 1982, in violation of section 108A—5(b) was a technical defect which, in this case, did not warrant the drastic remedy of suppression. Where, as here, a technical defect is not the product of intentional misconduct by law enforcement officials and does not defeat the legislative intent of protecting the citizenry from unnecessary and prolonged governmental intrusion into their private lives when less intrusive methods of investigation are available (see *Sylvester*), then, absent of any showing of actual prejudice to the defendant, suppression of an overheard and/or recorded material is not required.

■ In so ruling, we are not unmindful of the statutory mandate of section 108A—9(a)(2). That section of the eavesdropping statute requires suppression when an order is "improperly" granted. We hold that the type of "impropriety" referred to in section 108A—9(a)(2) does not include technical defects which are purely inadvertent, nonprejudicial and do not impair the legislative intent embodied in the statute.

■■ ■ The defendant argues next that the initial application for use of an eavesdropping device was fatally defective because it failed to establish reasonable cause to believe that the defendant had committed a felony and reasonable cause to believe that particular conversations would be obtained through the use of an eavesdropping device. (Ill. Rev. Stat. 1981, ch. 38, pars. 108A—4(b), (c).) We disagree with both facets of defendant's argument.

The expression "reasonable cause" for purposes of the eavesdropping statute has been equated with "probable cause" (*Monoson*). To determine whether probable cause is sufficiently stated in a complaint for issuance of a search warrant, the trial court is required to examine the facts under a "totality of the circumstances" analysis to determine whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." (*Illinois v. Gates*

(1983), 462 U.S. 213, 238, 76 L. Ed. 2d 527, 548, 103 S. Ct. 2317, 2332.) Circumstances set forth relative to the informant's veracity or reliability are relevant factors to the court's probable cause determination. On review, it is our duty to ensure that the trial court "had a 'substantial basis for *** conclud[ing]' that probable cause existed." 462 U.S. 213, 238, 76 L. Ed. 2d 527, 548, 103 S. Ct. 2317, 2332, quoting *Jones v. United States* (1960), 362 U.S. 257, 271, 4 L. Ed. 2d 697, 708, 80 S. Ct. 725, 736.

█ █ The "totality of the circumstances" analysis is appropriate for rendering "reasonable cause" determinations on an application for use of an eavesdropping device as well. Our review of Sergeant Daly's January 29 application convinces us that the trial court had a substantial basis for determining that reasonable cause existed under both subsection 108A–4(b) and subsection 108A–4(c) of the eavesdropping statute. The application provided sufficient details about the developing relationship to indicate the child's intelligence, and considering her age and the circumstances surrounding her discussion of the offenses, the child's reliability was adequately demonstrated. The factual details related in the application about specific places where the acts of intercourse occurred and the particular circumstances that on each occasion afforded the defendant an opportunity to be alone with the child, together with her recollection that there were somewhere between 20 and 25 instances of intercourse, were sufficient to support Judge Wilhelm's determination that reasonable cause existed to believe that the defendant had committed a number of acts of indecent liberties with a child and that reasonable cause existed to believe that the relationship between the defendant and the victim was such that recorded conversations could be expected to result in admissions by the defendant.

█ Defendant's third argument on the suppression issue is that the eavesdropping was conducted by an unauthorized individual. This argument proceeds from the fact that the January 29 order granted "an Order to Daniel P. Daly to overhear or record the *** conversations." The record indicates that Daly was hospitalized shortly after the entry of the order. Consequently, Deputy Curtis Pierce assumed Daly's duties in the investigation of this case. Pierce overheard and recorded the telephone conversations authorized by the January 29 order.

Initially, we note that in *Sylvester* the defendant advanced a similar argument on grounds that the court's order authorizing "the agents of Chief Joseph Sylvester" and other named individuals to use an eavesdropping device inadequately identified the law enforcement

officers. The court reviewed the applicable statutory provision (Ill. Rev. Stat. 1977, ch. 38, par. 108A—1), which empowers the circuit judge to authorize the use of an eavesdropping device "by a law enforcement officer or agency having the responsibility for the investigation of any felony under Illinois law" (*People v. Sylvester* (1980), 86 Ill. App. 3d 186, 191, 407 N.E.2d 1002, 1007), and concluded that the order was not defective for failing to name the individual agents of Chief Sylvester. Specifically, the court held:

"There is no requirement that the application or order must identify the individuals or agency so authorized (see Ill. Rev. Stat. 1977, ch. 38, pars. 108A—3(a), 108A—5(a)), and we will not impose such a requirement when the legislature has not done so. *People v. Kezerian* (1979), 77 Ill. 2d 121, [32 Ill. Dec. 321], 395 N.E.2d 551." 86 Ill. App. 3d 186, 191, 407 N.E.2d 1002, 1007.

The defendant attempts to distinguish *Sylvester* on grounds that the order in that case was sufficiently broad to encompass certain unnamed law enforcement officers, but that the order in the instant case was specifically limited to Sergeant Daly. While this argument is facially appealing, we are not persuaded that suppression of the recorded conversations was required merely because Deputy Pierce was not specifically named in the order.

The State argues that the order is sufficiently ambiguous to be construed as granting the order to Sargeant Daly, but not requiring him to carry it out personally. Thus, the State reasons, there was no legal impediment to Deputy Pierce carrying out the order as Daly's agent. The State's argument, though strained, recognizes the day-to-day operation of an investigative department and appears to comport with the spirit of the eavesdropping statute as interpreted in *Sylvester*.

In our opinion, and had time permitted, it may have been preferable procedure for the State's Attorney, upon learning that Daly was incapacitated, to have had the order judicially amended prior to permitting Deputy Pierce to execute it. In any event, it is clear that under the circumstances presented in this case the eavesdropping was in all other respects conducted in compliance with Judge Wilhelm's order, and the defendant was not in any way prejudiced by Pierce's assumption of Daly's authority to use the eavesdropping device. Accordingly, we hold that the trial court did not err in admitting the tape recordings into evidence over defendant's objection on this basis.

■ Finally, defendant contends that there is no statutory authority for "supplemental" applications and orders for use of eavesdrop-

ping devices—*ergo*, the face-to-face conversation of February 1, 1982, should have been suppressed. Although the eavesdropping statute consistently refers to "an eavesdropping device" in the singular, it does not explicitly proscribe the issuance of multiple orders. Authority for multiple applications and orders appears in section 108A—3. That section, in pertinent part, reads as follows:

"*Each* application for an order authorizing *** the use of an eavesdropping device shall be made in writing upon oath or affirmation to a circuit judge and shall state the applicant's authority to make such application. *Each* application shall include the following:

*** *** ***

(4) a statement of the existence of *all previous applications* known to the individual *** which have been made to any judge requesting permission to use an eavesdropping device involving the same persons in the present application, and the action taken by the judge on *the previous applications*;

(5) when the application is for an extension *of an order*, a statement setting forth the results so far obtained from the use of the eavesdropping device or an explanation of the failure to obtain such results." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 38, par. 108A—3.

However, since the statute does not expressly refer to overlapping applications and orders, we must consider the legislative intent of the statute to resolve the question before us. As stated in *Sylvester*, the statute was intended "to protect the right of privacy and to provide [a] comprehensive [scheme] for authorization of communication interceptions." *People v. Sylvester* (1980), 86 Ill. App. 3d 186, 192, 407 N.E.2d 1002, 1007.

The five-page supplemental application in this case complies with the requirements for applications for subsequent orders in that it explained why the results under the prior order were unsatisfactory, what those results were, and why a face-to-face conversation about the felony could be expected to result from the use of the additional eavesdropping device. The defendant, during the January 31 telephone conversation, clearly indicated that he was anxious to discuss the child's purported quandary with her in person. This situation presented something of a dilemma to the investigating officers, since their eavesdropping order was limited to telephonic conversations. It was impractical to have the child make arrangements for a time and place for a face-to-face conversation before the court had approved the use of an eavesdropping device to record such conversation. Con-

sequently, the supplemental application, in addition to seeking authority to use another eavesdropping device, requested that the prior order remain in effect. This procedure enabled the officers to record both the telephone conversation in which arrangements were made to meet and the ensuing face-to-face conversation without unduly disrupting and prolonging the investigation. Certainly, had the State's Attorney so chosen, he could have permitted the child to make the arrangements to meet in person before applying for a new eavesdropping order in hopes that a subsequent order would be issued promptly. This latter procedure would have posed additional risks for the child, but unquestionably would have been permissible under the statute. Yet the consequences to the defendant in terms of governmental intrusion on his right to privacy would have been no different had the latter procedure been followed in this case. The defendant's apparent inhibitions about discussing sexual matters with the child over the telephone while he was in the presence of others was adequately explained in Deputy Pierce's supplemental application of February 1, 1982. The parties to be overheard, the last effective date of the applications and the content of the conversations sought were common to both applications. The only significant difference between the two applications concerned the mode of conversation—telephonic or face-to-face—and the use of appropriate devices to record such conversations. Both orders specified that they automatically terminated as soon as the sought-after conversations about the felony were recorded.

██ It is our opinion that the orders as issued provided adequate protection against excessive or prolonged surveillance. Since the legislature chose not to expressly prohibit the use of supplemental eavesdropping applications, and we find that the orders in this case adequately complied with the spirit of the Act, we hold that the issuance of the supplemental order was not error and that the defendant's motion to suppress was properly denied.

██ Lastly, we consider the defendant's sentencing issue. The defendant contends that his sentence is excessive because the sentencing judge did not favorably consider the existence of certain mitigating factors and because he found in aggravation that the sentence imposed was necessary to deter others from committing the same crime. At the sentencing hearing, several witnesses testified on the defendant's behalf. The defendant's friends and neighbors testified that they had never seen the defendant make sexual advances to anyone, and they were not concerned about the safety of their minor daughters when their daughters were alone with him. In addition, the defendant's wife testified that she would have a hard time supporting her-

self if her husband were imprisoned. The defendant's son testified that he would give his father a job in Texas if he were placed on probation. The defendant, himself, testified that he had arthritis and a slight heart condition.

While the foregoing testimony constitutes some evidence of factors in mitigation under sections 5—5—3.1(8), (9), (10), (11) and (12), the sentencing judge was free to deemphasize these factors in arriving at an appropriate sentence. We have read the record of the sentencing hearing and it is clear that the judge considered all of the foregoing mitigating factors suggested by the defense, but did not find that they weighed significantly in his determination. The judge specifically found that section factors (6) and (7)—that the defendant was willing to make restitution and that he had no significant history of criminality—did carry weight in the defendant's favor.

In aggravation, the court considered the child's age at the times of the offenses and that the sentence was necessary to deter others. The record sufficiently supports the court's findings of these aggravating factors. The sentences imposed for these repeated offenses are well within the statutory range for Class 1 felonies (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(4)). We cannot state based on the record before us that the sentencing judge abused his discretion in imposing concurrent sentences of imprisonment of four, eight and 12 years.

For the foregoing reasons, we affirm the judgment and sentence of the circuit court of Fulton County.

Affirmed.

STOUDER, P.J., and SCOTT, J., concur.