THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JESUS B. NUNEZ, Defendant-Appellant.

Second District   No. 2—00—0851

Opinion filed September 28, 2001.

Clarence L. Burch, of Clarence L. Burch & Associates, of Chicago, for appellant.

Gary W. Pack, State's Attorney, of Woodstock (Martin P. Moltz and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), and Martha M. Gillis, of Evanston, for the People.

JUSTICE GROMETER delivered the opinion of the court:

Defendant, Jesus B. Nunez, appeals from the judgment of the circuit court of McHenry County, dismissing his petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 *et seq.* (West 1998)). Defendant argues on appeal that the trial court erred in summarily dismissing his petition, which alleged the ineffective assistance of trial and appellate counsel in violation of his federal and state constitutional rights. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 2. More specifically, defendant claims that he was denied the effective assistance of trial counsel because his attorney failed to make a pretrial challenge to the admission of audio and video record-

ings obtained pursuant to an order for a consensual overhear. Defendant further argues that appellate counsel was ineffective for failing to raise trial counsel's error on direct appeal. For the reasons that follow, we reverse the judgment of the circuit court and remand the cause for an evidentiary hearing.

## BACKGROUND

On August 28, 1997, defendant was indicted for unlawful possession with intent to deliver a controlled substance (720 ILCS 570/401(a)(2)(D) (West 1996)) and criminal drug conspiracy (720 ILCS 570/405.1 (West 1996)). At defendant's bench trial, the State's principal witness was Steven Schalk. Prior to defendant's indictment, Schalk had been arrested with three kilograms of cocaine in his possession and had been charged with unlawful possession of a controlled substance with intent to deliver. Following his arrest, Schalk spoke with agents of the North Central Narcotics Task Force (Task Force) and agreed to become a confidential informant working under the name of "Tim Seymour." The Task Force devised a "reverse buy" sting operation under which Schalk would "sell" large amounts of a controlled substance to individuals believed to be trafficking illegal drugs. Defendant's son was identified as one of the targets of the sting. However, Schalk testified that, upon learning that defendant's son was in jail, Task Force agents told him to pursue defendant.

As part of the sting operation, Cindy Schultz, then a Task Force agent, filed a "Petition for Order Authorizing Use of Eavesdropping Device" (petition) pursuant to section 108A—3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/108A—3 (West 1996)). The petition identified "Tim Seymour" as the party to the expected conversation consenting to the use of the eavesdropping device. Attached to the petition was the State's Attorney's authorization for a petition and order approving the use of an eavesdropping device and an affidavit signed by Schultz. Schultz's affidavit indicated that Tim Seymour agreed to participate in the sting operation. Also attached to the petition was a document signed by Tim Seymour consenting to be subject to electronic surveillance. Based on Schultz's petition, a judge issued an order (consensual overhear order) authorizing the use of an eavesdropping device for the purpose of overhearing and recording conversations between Tim Seymour and others.

Early in August 1997, Schalk and defendant had several conversations discussing matters related to the sale. A number of these conversations were recorded pursuant to the consensual overhear order. Eventually, defendant and Schalk agreed to meet at Schalk's apartment, at which time a third party, later identified as Christopher Ad-

ams, would purchase a kilogram of cocaine. In reality, the Task Force had rented the apartment and equipped it with hidden video equipment. Once inside the apartment, Adams handed Schalk an undisclosed amount of cash. Schalk then retrieved the cocaine and handed it to defendant. Defendant held the cocaine briefly before placing it on a table. As Adams continued to count some other monies, defendant again picked up the package and held it for a few seconds. A loud noise then came from somewhere inside the apartment. Defendant placed the package on the table and looked for the source of the noise. Within seconds, Task Force agents entered the room and arrested defendant and Adams.

Defendant's bench trial commenced on March 17, 1998. In addition to Schalk, a forensic chemist, Schultz, and three other Task Force agents testified at defendant's trial. During Schalk's testimony, the State attempted to play the audio tapes and the videotape obtained pursuant to the consensual overhear order. Defense counsel moved to suppress the recordings, arguing that the documents submitted to obtain the consensual overhear order identified the party consenting to the use of the eavesdropping device as "Tim Seymour," rather than Schalk. Defendant claimed that the Task Force was untruthful by failing to identify the true party consenting to electronic surveillance. The motion further alleged that the petition violated section 108A—3 of the Code by failing to include the identity of the party consenting to the use of an eavesdropping device. The State, however, contended that prior to trial it (1) provided defendant with discovery materials indicating that Schalk was the confidential informant and (2) defense counsel was given the opportunity to meet with Schalk. Thus, the State argued that defendant's motion was untimely. The trial court denied the motion to suppress without an evidentiary hearing. The court noted that defendant was not surprised by the fact that Schalk was the confidential informant. Accordingly, the audio tapes and the videotape were presented at defendant's trial.

The trial court found defendant guilty of unlawful possession of a controlled substance with intent to deliver. Defendant was sentenced to 24 years' imprisonment and ordered to pay a fine of $25,000. Defendant filed a motion for a new trial, which the trial court denied. On direct appeal, defendant was represented by the same law firm. Among the issues raised by appellate counsel was that the trial court erred in refusing to address and decide his motion to suppress the audio and video recordings. We held that the trial court did not abuse its discretion in denying defendant's motion to suppress without an evidentiary hearing. We explained that defendant's motion was untimely because defendant was aware of the true identity of the informant at least two

months prior to trial. Accordingly, we affirmed defendant's conviction and sentence (*People v. Nunez*, No. 2—98—0812 (1999) (unpublished order under Supreme Court Rule 23)). Subsequently, our supreme court denied defendant's petition for leave to appeal (*People v. Nunez*, 188 Ill. 2d 577 (2000)).

Defendant then obtained new counsel, and, on May 2, 2000, he filed his petition for postconviction relief. Defendant argued that he was denied the effective assistance of trial counsel because his attorney failed to make a pretrial challenge to the admission of the audio and video recordings obtained through the consensual overhear order. In addition, defendant argued that appellate counsel was ineffective for failing to raise trial counsel's error on appeal. The trial court found that defendant's petition was patently without merit and dismissed it without an evidentiary hearing. This appeal ensued.

## DISCUSSION

Defendant claims that he was entitled to an evidentiary hearing to assess the validity of his claim that he was denied the effective assistance of trial and appellate counsel.

■ As a preliminary matter, we note that postconviction petitions are reserved for constitutional issues that have not been, and could not have been, previously adjudicated. *People v. Eddmonds*, 143 Ill. 2d 501, 510 (1991). Thus, as a general rule, all issues that could have been presented on direct appeal, but were not, are deemed waived for purposes of postconviction review. *People v. Page*, 193 Ill. 2d 120, 130 (2000). The waiver rule is relaxed, however, where (1) fundamental fairness so requires, (2) the alleged waiver stems from the incompetence of appellate counsel, or (3) the facts relating to the claim do not appear on the face of the original appellate record. *People v. Hobley*, 182 Ill. 2d 404, 428 (1998). In this case, defendant argues ineffective assistance of trial and appellate counsel. Accordingly, any waiver stemmed from the actions of appellate counsel, and we will address the issues raised by defendant.

■ Of course, unless trial counsel's performance is found to be ineffective, defendant has suffered no prejudice from appellate counsel's failure to challenge trial counsel's competency. See *People v. Towns*, 182 Ill. 2d 491, 523 (1998). Moreover, in the instant case, the record reveals that the same law firm represented defendant at trial and on direct appeal. Under these circumstances, it would be unreasonable to expect appellate counsel to raise and argue his own incompetency. *People v. Gaines*, 105 Ill. 2d 79, 91 (1984). Accordingly, we need only address whether counsel's performance at trial was deficient.

■ The Act provides a collateral remedy by which criminal defendants may challenge their convictions or sentences for violations of federal or state constitutional law. *People v. Barrow*, 195 Ill. 2d 506, 518-19 (2001). However, a postconviction petitioner is not entitled to an evidentiary hearing as a matter of right. *Barrow*, 195 Ill. 2d at 519. Instead, an evidentiary hearing is warranted only when the allegations of the postconviction petition, supported when necessary by the trial court record or accompanying affidavits, make a substantial showing that the defendant's constitutional rights have been violated. *People v. Haynes*, 192 Ill. 2d 437, 465 (2000); *Towns*, 182 Ill. 2d at 503. In a postconviction proceeding, the defendant bears the burden of proving that a substantial constitutional violation occurred (*People v. Mahaffey*, 194 Ill. 2d 154, 170 (2000)), and all well-pleaded facts in the petition are to be taken as true (*People v. Caballero*, 126 Ill. 2d 248, 259 (1989)). The dismissal of a postconviction petition without an evidentiary hearing is subject to *de novo* review. *People v. Coleman*, 183 Ill. 2d 366, 387-88 (1998).

Defendant asserts that he was denied the effective assistance of trial counsel because his attorney failed to file a pretrial motion to suppress the audio tapes and the videotape obtained pursuant to the consensual overhear order. As grounds for suppression, defendant claims that the consensual overhear order was improperly obtained because it failed to name the true identity of the party to the expected conversation consenting to the use of the eavesdropping device. According to defendant, trial counsel was aware well before trial that Schalk worked as a confidential informant for the Task Force under the name of "Tim Seymour." Yet, trial counsel did not move to suppress the recordings obtained pursuant to the consensual overhear order until after Schalk began testifying. Defendant notes that section 108A—3 of the Code is to be strictly construed (*People v. Monoson*, 75 Ill. App. 3d 1, 6 (1979)) and that the failure to challenge improperly obtained evidence has been found to result in incompetent representation (see *People v. Brinson*, 80 Ill. App. 3d 388 (1980)). Defendant further asserts that there is a reasonable probability that had trial counsel timely challenged the recordings, they would have been suppressed and the outcome of the trial would have been different.

In response, the State argues that defendant is unable to show that he was prejudiced by trial counsel's failure to timely file the motion to suppress. More specifically, the State contends that, even had trial counsel had the opportunity to argue the merits of the motion to suppress, defendant would not have prevailed. The State further asserts that, assuming defendant had prevailed on his motion to suppress the audio and video recordings, the proof against defendant was

so overwhelming that the result of the proceeding would not have been different.

◼ To determine whether a defendant was denied the effective assistance of counsel, we apply the two-prong test developed by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), and adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504, 526 (1984). To prevail on a claim of ineffective assistance of counsel, the defendant must show both that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant such that he was deprived of a fair trial. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. The failure to satisfy either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel. *People v. Patterson*, 192 Ill. 2d 93, 107 (2000).

◼ To satisfy the deficient-performance prong of *Strickland*, a defendant must show that his counsel's performance was so inadequate that counsel was not functioning as the "counsel" guaranteed by the sixth amendment. *People v. Erickson*, 183 Ill. 2d 213, 223 (1998). Counsel's performance is measured by an objective standard of competence under prevailing professional norms. *People v. Smith*, 195 Ill. 2d 179, 188 (2000). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance (*Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065), and, as a general rule, matters of trial strategy, such as whether to file a motion to suppress, are immune from claims of the ineffective assistance of counsel (*People v. Fernandez*, 162 Ill. App. 3d 981, 987 (1987)). Nevertheless, where such a motion is appropriate, the failure to file a motion to suppress will constitute ineffective assistance. See, *e.g.*, *Fernandez*, 162 Ill. App. 3d at 988-89 (finding ineffective assistance of trial counsel for failure to file motion to suppress confessions of mentally handicapped defendants); *Brinson*, 80 Ill. App. 3d at 393-94 (finding ineffective assistance of trial counsel for failure to file motion to suppress (1) suggestive identification evidence and (2) confession where defendant claimed coercion).

◼ To establish the prejudice prong of *Strickland* in the context of a motion to suppress, a defendant must show that a reasonable probability exists both that the motion would have been granted and that the outcome of the trial would have been different had the evidence been suppressed. *People v. Orange*, 168 Ill. 2d 138, 153 (1995); *People v. Myers*, 246 Ill. App. 3d 542, 545 (1993). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Erickson*, 183 Ill. 2d at 224, quoting *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

We find that defendant's petition for postconviction relief makes a substantial showing of both the deficient-performance and prejudice prongs of the *Strickland* test.

■ We begin our analysis with the deficient-performance prong. A motion to suppress evidence obtained from electronic surveillance should be made before trial unless the opportunity did not exist or the defendant was not aware of the grounds for the motion. 725 ILCS 5/108A—9(b) (West 1996). In the instant case, there was no evidence that the opportunity did not exist to present a motion to suppress prior to trial. Indeed, defense counsel filed other pretrial motions, including a motion to dismiss based upon a speedy trial violation.

Upon presenting the motion to suppress, however, defense counsel asserted that it was not until the first day of trial that he learned that the true identity of the Task Force's confidential informant was Schalk. However, as defendant notes, the record discloses otherwise. On October 16, 1997, defense counsel first received a copy of the petition. The petition identified the confidential informant as "Tim Seymour." At a hearing on October 30, 1997, defense counsel acknowledged that there was "an issue whether or not [the confidential informant] is the actual individual who is identified by name." Further, at a pretrial hearing on January 26, 1998, defense counsel called Schalk to testify. During the direct examination, the following colloquy ensued between defense counsel and Schalk:

"Q. State your name and spell your last name for the reporter.

A. Steven Allen Schalk. S-c-h-a-l-k.

Q. And did you at one point in time begin to work with North Central Narcotics Task Force and identify yourself as Tim Seymour?

A. Yes.

Q. You were in fact a confidential informant in the case of People v. Jesus Nunez, Sr.?

A. Yes."

This evidence clearly demonstrates that, at least two months prior to trial, defense counsel was aware that Schalk was the confidential informant working under the name of Tim Seymour. We can conceive of no sound trial strategy under which trial counsel would delay filing the motion to suppress until after defendant's trial commenced. Obviously, defense counsel did not believe that filing a motion to suppress was contrary to his trial strategy or that it would have been futile, or he would not have bothered to raise the issue during the course of defendant's trial. See *People v. Robinson*, 299 Ill. App. 3d 426, 435 (1998) ("trial counsel's failure to file a motion to suppress does not establish incompetent representation, especially when that motion would

be futile"). Under these circumstances, we conclude that defendant has pleaded sufficient facts to support a finding that counsel's failure to timely present the motion fell below an objective standard of reasonableness.

■ We now turn to *Strickland*'s prejudice prong. Section 108A—3 of the Code (725 ILCS 5/108A—3 (West 1996)) outlines the procedure for obtaining judicial approval of the use of an eavesdropping device. Relevant here is section 108A—3(a)(2)(c) (725 ILCS 5/108A—3(a)(2)(c) (West 1996)), which provides:

> "§ 108A—3. Procedure for Obtaining Judicial Approval of Use of Eavesdropping Device. (a) Where any one party to a conversation to occur in the future has consented to the use of an eavesdropping device to overhear or record the conversation, a judge may grant approval to an application to use an eavesdropping device pursuant to the provisions of this section.
>
> Each application for an order authorizing or subsequently approving the use of an eavesdropping device shall be made in writing ***. Each application shall include the following:
> ***
> (2) a statement of the facts and circumstances relied upon by the applicant to justify his belief that an order should be issued including: *** (c) the identity of the party to the expected conversation consenting to the use of an eavesdropping device ***." 725 ILCS 5/108A—3(a)(2)(c) (West 1996).

■ Section 108A—3 of the Code must be strictly construed. *Monoson*, 75 Ill. App. 3d at 6. It is undisputed that the party applying for a consensual overhear order is not statutorily required to reveal the true identity of the party consenting to the overhear. For instance, in *People v. Manuel*, 294 Ill. App. 3d 113 (1997), the State's application for consensual overhear named its confidential informant as "Larry Wayne (alias)." The trial court denied the defendant's motion to suppress the recordings obtained pursuant to the consensual overhear order. On appeal, the defendant argued that the State's use of an alias to identify the party consenting to the overhear was improper. The appellate court disagreed. The court pointed out that section 108A—3(a)(2) does not require the consenting party to be identified in any particular way. *Manuel*, 294 Ill. App. 3d at 122. The court further stated that the use of an alias is acceptable "where the issuing judge is told the name is fictitious." *Manuel*, 294 Ill. App. 3d at 122. Finally, the court explained that, since the State gained no tactical advantage by using an alias, any technical defect in the State's compliance with the statutory requirements of section 108A—3 did not require suppression. *Manuel*, 294 Ill. App. 3d at 123.

Similarly, in *People v. Gonzalez*, 313 Ill. App. 3d 607 (2000), police

procured a consensual overhear order. The application identified the consenting party as "Mike Martinez (not his real name)." At trial, the defendant filed a motion to suppress the recordings obtained pursuant to the consensual overhear order, challenging the propriety of the order on the basis that the alleged consenting party was identified by an alias. The trial court rejected the defendant's argument, and this court affirmed. Relying on *Manuel*, we noted that the trial court was aware that a fictitious name was being used, and there was no indication that the police were trying to mislead the court. *Gonzalez*, 313 Ill. App. 3d at 614.

We note that the *Manuel* decision was decided before defendant's trial commenced. As discussed above, under *Manuel*, the use of an alias is acceptable "where the issuing judge is told the name is fictitious." *Manuel*, 294 Ill. App. 3d at 122. In this case, there was no evidence that the judge issuing the order for consensual overhear was aware that the confidential informant listed on the petition was using an assumed name. Unlike *Manuel* and *Gonzalez*, the application for the use of an eavesdropping device in this case did not indicate that the party consenting to the consensual overhear was using a fictitious name.

Moreover, although contradicted at trial by Task Force agents, Schalk testified at trial that he never signed the consent form using the alias "Tim Seymour." The purpose of the eavesdropping statute is to ensure that all eavesdropping is subject to judicial supervision and to prevent unwarranted intrusions into an individual's privacy. *Monoson*, 75 Ill. App. 3d at 8. We are unable to see how a judge can render proper supervision when the judge does not know the true identity of the individual consenting to be subject to eavesdropping or at least that the individual was operating under an assumed name. In light of these factors, and the fact that section 108A—3 is to be strictly construed, we find that there is a reasonable probability that the motion to suppress would have been granted.

Without the recordings, especially the videotape, it is evident that there is a reasonable probability that the result of the trial would be different. In denying defendant's motion for a directed finding on the possession-with-intent-to-deliver charge, the trial court referenced the videotape, stating:

> "In our case we have the tapes which have all been admitted, the audiovisual tape, and in looking at the audiovisual tape, [defendant] and Mr. Schalk and [a] third unknown person are in the apartment. It's at that time Mr. Schalk is at the table with this unknown third person.
>
> The unknown third person gives Mr. Schalk some money. Mr.

Schalk looked at the money, put it on the table. The unknown third person counted out the other parcel of the money that he retained. At that point Schalk left the view of the camera, came back with the package [of cocaine], which is in evidence as 6C, was wrapped in duct tape [sic]. He gave that package to [defendant].

[Defendant] had it physically in his hand, took it over to the table, put it on the table, kept his hands on the package. The only time he took his hands off the package is when he heard some noises. At that moment the officers moved in on the arrest of the unknown third person, [defendant] and Mr. Schalk.

There is no question in my viewing that tape, which I have viewed several times[,] that [defendant] in fact had possession of State's Exhibit 6C ***. There was no condition to this sale. The sale had been consummated, the money had changed hands. He had it in his hand. The agents move in."

Similarly, in pronouncing defendant guilty of possession of a controlled substance with intent to deliver, the trial court made the following comments:

"[I]n reviewing the audio videotape there is no question that Mr. Schalk handed to [defendant] State's Exhibit 6C. This was handed to him after the unidentified person in this case had given some money to Mr. Schalk, counted some other monies, and left them on the table ***. [Defendant] took possession of 6C, brought it to the table, had his hands on it. He removed his hands from 6C when he heard some noises which immediately precipitated the entry into the apartment by [Task Force] personnel.

Based on my review of the tape and the evidence beyond a reasonable doubt there was a knowing intent by [defendant] for the possession with the intent to deliver the controlled substance, the possession being unlawful. There will be a finding of guilty on that count."

It is clear from the trial court's comments that it heavily relied on the videotape in finding defendant guilty. Without the aid of the recordings obtained pursuant to the consensual overhear order, most of Schalk's testimony was of dubious value, since his testimony essentially consisted of listening to the audio tapes, viewing the videotape, and confirming the events recorded thereon.

In addition, we point out that section 401 of the Illinois Controlled Substances Act makes it "unlawful for any person knowingly to *** possess with intent to *** deliver, a controlled *** substance." 720 ILCS 570/401 (West 1998). Thus, in order to prove unlawful possession of a controlled substance with intent to deliver, the State must prove beyond a reasonable doubt that (1) the defendant had knowledge of a controlled substance, (2) the controlled substance was in the

immediate control and possession of the defendant, and (3) the amount of the controlled substance exceeded that which could be viewed as merely for personal use. *People v. Hodogbey*, 306 Ill. App. 3d 555, 559 (1999). Possession may be actual or constructive. *People v. Melgoza*, 231 Ill. App. 3d 510, 529 (1992). To support a finding of constructive possession, the State must prove that the contraband was in the defendant's immediate and exclusive control and the defendant knew the contraband was present. *People v. Beverly*, 278 Ill. App. 3d 794, 798 (1996). In this case, aside from Schalk's testimony, none of the remaining witnesses ever testified that defendant was in actual or constructive possession of the cocaine.

Under these circumstances, we find that there is a reasonable probability that a different result would obtain had the motion to suppress been timely filed and granted.

■■■ In reaching this conclusion, we emphasize that we are determining only that defendant has pleaded sufficient facts to enable him to obtain an evidentiary hearing. We do not decide whether trial counsel's representation was truly ineffective. It is the task of the trial court, after the evidentiary hearing, to resolve this issue.

Before concluding, we acknowledge a recent case from our supreme court that neither party cited. In *People v. Edwards*, 195 Ill. 2d 142 (2001), the defendant argued that trial counsel was ineffective for failing to seek the suppression of tape recordings of telephone calls he made to the victim's wife. The defendant claimed that the calls were recorded in violation of section 108A—1 of the Code (Ill. Rev. Stat. 1985, ch. 38, par. 108A—1 (now codified, as amended, at 725 ILCS 5/108A—1 (West 1998))). On direct appeal, the supreme court found that the defendant's failure to raise the issue in the trial court resulted in waiver. *People v. Edwards*, 144 Ill. 2d 108, 163-64 (1991). In his postconviction petition, the defendant alleged that counsel was ineffective for failing to preserve the issue for review. Citing to *People v. Beardsley*, 115 Ill. 2d 47 (1986), and *People v. Herrington*, 163 Ill. 2d 507 (1994), the supreme court dismissed the defendant's argument in one short paragraph. It determined that judicial authorization was not required under the statute because the recordings were made with the consent of one of the persons taking part in the conversation. *Edwards*, 195 Ill. 2d at 165.

We question the applicability of *Edwards* to the instant case. *Edwards* does not explain the reasoning underlying its conclusion. True, the court cites to *Beardsley* and *Herrington*. However, those cases did not deal with that portion of the Code outlining the procedure for judicial supervision of eavesdropping devices. See 725 ILCS 5/108A—1 *et seq.* (West 1996). Instead, those two cases interpreted a prior ver-

sion of section 14—2 of the eavesdropping statute (720 ILCS 5/14—2 (West 1996)), which defines the elements of the offense of eavesdropping.

To the extent that section 14—2 of the eavesdropping statute can be said to be applicable here, we note that we are required to apply the version of the statute in effect at the time the recording was made. *People v. Rodriguez*, 313 Ill. App. 3d 877, 886-87 (2000), *appeal denied*, 191 Ill. 2d 553 (2000). The version of the eavesdropping statute in effect at the time the recordings in this case were made differs substantially from the version in effect at the time the recordings in *Edwards*, *Beardsley*, and *Herrington* were made. As the *Beardsley* court noted, the primary factor in determining whether eavesdropping occurred is whether the nonconsenting declarants "intended their conversation to be of a private nature under circumstances justifying such expectation." *Beardsley*, 115 Ill. 2d at 54. In other words, at that time, the statute did not reach conversations that a party did not intend to be private. *People v. Siwek*, 284 Ill. App. 3d 7, 14 (1996), *appeal denied*, 171 Ill. 2d 581 (1996).

At the time that the recordings involved in this case were made, the eavesdropping statute provided that a person commits eavesdropping when he "(a) [u]ses an eavesdropping device to hear or record all or any part of any conversation unless he does so (1) with the consent of all of the parties to such conversation or (2) in accordance with Article 108A *** of the [Code]." 720 ILCS 5/14—2 (West 1996). However, since *Beardsley*, the legislature amended the eavesdropping statute to define a "conversation" as "any oral communication between 2 or more persons regardless of whether one or more of the parties intended their communication to be of a private nature under circumstances justifying that expectation." See Pub. Act 88—677 § 20, eff. December 15, 1994 (now codified, as amended, at 720 ILCS 5/14—1(d) (West 1996)). This amendment has been interpreted to "prohibit[ ] the recording of any conversation without the consent of all parties regardless of any party's expectation of privacy." *In re Marriage of Almquist*, 299 Ill. App. 3d 732, 736 (1998), *appeal denied*, 182 Ill. 2d 547 (1999); see also *People v. Nestrock*, 316 Ill. App. 3d 1, 7 (2000), *appeal denied*, 192 Ill. 2d 701 (2000); *Rodriguez*, 313 Ill. App. 3d at 883; *Siwek*, 284 Ill. App. 3d at 14. Accordingly, the eavesdropping statute in effect at the time the tapes were made in the instant case would have prohibited the recordings unless made in accordance with Article 108A of the Code (725 ILCS 5/108A—1 *et seq.* (West 1996)). 720 ILCS 5/14—2(a)(2) (West 1996).

## CONCLUSION

For the aforementioned reasons, we reverse the judgment of the

circuit court of McHenry County and remand this cause for an evidentiary hearing.

Reversed and remanded.

GEIGER and O'MALLEY, JJ., concur.