NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240443-U

NO. 4-24-0443

IN THE APPELLATE COURT

FILED
January 24, 2025
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| WILLIE MAYZE, | ) | No. 23DT274 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Doherty and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, holding defendant's claim of ineffective assistance of counsel failed where defendant was unable to establish that he was prejudiced when counsel did not file a motion to suppress his statements.

¶ 2    On April 24, 2023, the State charged defendant, Willie Mayze, with driving under the influence of alcohol (DUI) (count I) (625 ILCS 5/11-501(a)(2) (West 2022)), driving with a blood alcohol concentration (BAC) of 0.08 or more (count II) (*id.* § 11-501(a)(1), and illegal transportation of alcohol in a motor vehicle (count III) (*id.* § 11-502(a)). A jury trial was held on October 3, 2023. Defendant was found guilty on all three counts. At the sentencing hearing on December 1, 2023, counts I and II were merged and the trial court ordered defendant to pay a fine, complete residential alcohol treatment, and serve 60 days in the McLean County jail. On January 2, 2024, defendant filed a *pro se* motion titled "Motion for Appeals," arguing ineffective assistance of counsel, prosecutorial misconduct, and issues with jury selection during his trial.

¶ 3        Despite defendant's motion being titled "Motion for Appeals," the trial court decided to hear the merits of defendant's claims by conducting a hearing on March 4, 2024. The first half of the hearing consisted of a *Krankel* hearing (see *People v. Krankel*, 102 Ill. 2d 181 (1984)) to address the ineffective assistance of counsel claim. The court found no evidence of ineffective assistance of counsel and concluded the *Krankel* portion of the hearing. The court then considered defendant's other claims (prosecutorial misconduct and jury selection issues) as a motion to reconsider, despite defendant not labeling his motion as such. The court found no merit in defendant's other claims. Defendant filed a notice of appeal on March 12, 2024. For the reasons that follow, we affirm.

¶ 4                    I. BACKGROUND

¶ 5                    A. The Arrest and Charges

¶ 6        On April 22, 2023, defendant pulled into the parking lot of TA Travel Center (truck stop) in Bloomington. An attendant at the truck stop observed defendant dancing around his car, stumbling, and talking to himself before he made his way inside. When defendant approached the attendant at the register to purchase a cigar, she smelled alcohol on his breath. She then observed defendant go back to his car and called the police.

¶ 7        Officer Mathew Tribley from the Bloomington Police Department responded to the call. When he arrived, he saw defendant walking out of the truck stop and approached him. Officer Tribley noticed defendant had slurred speech, glassy eyes, and the smell of alcohol on his breath. He asked defendant how he made it to the truck stop, and defendant responded by saying he walked there. After Officer Tribley asked how defendant's car got there, defendant admitted he had driven there. Defendant also admitted to drinking "a little bit" and that his last drink was an hour prior. Defendant was arrested for DUI. Officer Tribley performed an inventory search of

defendant's car and found two opened bottles of wine. One bottle was empty, and the other was about half empty. Defendant was charged with one count of DUI, one count of driving with a BAC of 0.08 or more, and one count of illegal transportation of alcohol.

¶ 8                                B. The Jury Trial

¶ 9           A jury trial was held on October 3, 2023. The State called five witnesses, including an employee of the truck stop, the employee's friend, and three police officers from the Bloomington Police Department. Defendant did not call witnesses or present evidence.

¶ 10                1. *Ashley Jackson's and Elaine Burnett's Testimony*

¶ 11           Ashley Jackson testified she was an attendant at the truck stop on the day of the incident. That late afternoon to early evening, while running the cash register, she saw defendant pull into the truck stop in his blue Ford. She observed defendant dancing around his car, stumbling, and talking to himself outside. When he entered the truck stop, he walked up to the register and asked to buy a cigar. At that point, Jackson smelled alcohol on his breath. After observing him leave and walk back toward his car, she called the police.

¶ 12           Elaine Burnett testified that, while visiting her friend, Jackson, at work on the day of the incident, she observed defendant stumbling inside the truck stop and stated he "smelled and acted like he was drunk." On cross-examination, Burnett testified she first saw defendant inside the truck stop, then watched him go outside like he was going to his car and then watched him stumble back into the truck stop. At some point she observed him sitting in his car before he hurried and got out of it. She testified that "[w]hen he saw the police, he literally did a U-turn and came back to the [truck stop]." When he was inside the truck stop, she testified he smelled like alcohol.

¶ 13                    *2. Officer Mathew Tribley's Testimony*

¶ 14            Officer Tribley testified he was on patrol on April 22, 2023, when he got a call for service regarding a Black male that entered the truck stop. The report indicated the man could barely walk and smelled of alcohol. When he arrived at the truck stop, he identified defendant from the description given by the caller. The entire interaction between Officer Tribley and defendant was captured on his body worn camera, and a portion of that footage was admitted into evidence.

¶ 15            Officer Tribley approached defendant and, when speaking with him, noticed signs of intoxication, including slurred speech, glassy eyes, an odor of alcohol on his breath, and mood swings. He asked defendant how he got to the truck stop, and defendant responded that he walked there. He then asked defendant why his car was outside, and defendant admitted to driving to the truck stop. When asked if he had anything to drink, defendant responded with "a little bit," gestured with his hands to the size of the wine bottle, and claimed his last drink was approximately an hour before.

¶ 16            Defendant was eventually arrested, at which point Officer Tribley inventoried defendant's vehicle. He found two wine bottles, one behind the passenger seat and the other behind the driver's seat. One bottle was empty, while the other was about half empty. Pictures of the bottles taken by Officer Tribley were admitted into evidence.

¶ 17                    *3. Officer Justin Callahan's Testimony*

¶ 18            Officer Justin Callahan testified he received a call for service at the truck stop based on the same description Officer Tribley received. He was wearing a body worn camera during the entire interaction with defendant, and a portion of the footage was admitted into evidence.

¶ 19        When Officer Callahan arrived at the truck stop, he spoke with defendant, who showed signs of intoxication, including bloodshot eyes, slurred speech, thick-tongued speech, stumbling, and an odor of alcohol on his breath. When Officer Callahan asked defendant how he got there, defendant admitted he drove there. When he asked defendant how much he had to drink, defendant responded that he had a glass and a half of wine. Officer Callahan then asked defendant to perform standardized field sobriety tests. Defendant refused, saying he was not driving anymore and his wife was coming to pick him up. Officer Callahan asked defendant to perform the field sobriety tests again, and defendant agreed. After asking defendant preliminary questions before administering the test (specifically, if he had any abnormalities with his eyes), defendant answered and then changed his mind about performing the tests. Officer Callahan continued to ask defendant to perform the tests, but defendant refused. Defendant was placed under arrest for DUI and transported to the police station.

¶ 20                            4. *Officer John Gaffney's Testimony*

¶ 21        Officer John Gaffney proceeded with the DUI investigation at the police station by collecting breath samples from defendant. Gaffney testified defendant's breath sample showed a 0.106 BAC, exceeding the legal limit of 0.08.

¶ 22                    C. Jury Trial, Sentencing, and Posttrial Proceedings

¶ 23        The jury found defendant guilty on all three counts. At the sentencing hearing on December 1, 2023, the trial court merged counts I and II and entered the agreed upon sentence, including a fine, residential alcohol treatment, and 60 days in jail (with 3 days' credit).

¶ 24        On January 2, 2024, defendant filed a *pro se* motion titled "Motion for Appeals." The motion argued ineffective assistance of counsel, concerns about jury selection, and prosecutorial misconduct. The trial court held a *Krankel* hearing on March 4, 2024, to assess

defendant's claims of ineffective assistance of counsel. Defendant argued his public defender "did not objected [*sic*] to two things" (she did not object when an officer at the trial testified defendant was charged with two DUIs), did not support his case with a witness he wanted to testify at his trial, and did not challenge the jury selection (when there was only one African American juror). The court found no merit to defendant's claim of ineffective assistance of counsel. After disposing of the *Krankel* issues, the court considered how to address defendant's arguments regarding prosecutorial misconduct and jury selection. The court treated those matters as if they were raised in a motion to reconsider, despite defendant not labeling his motion as such. After considering the arguments, the court found no prosecutorial misconduct or issues with jury selection.

¶ 25        This appeal followed.

¶ 26                                    II. ANALYSIS

¶ 27        Defendant's sole claim on appeal is that he was denied the effective assistance of counsel when his attorney failed to file a motion to suppress certain statements he made to the police before being informed of his *Miranda* rights (see *Miranda v. Arizona*, 384 U.S. 436 (1966)). Defendant claims he is entitled to a new trial and the appointment of competent counsel.

¶ 28        As an initial matter, the State argues defendant has forfeited his claim of ineffective assistance on appeal by failing to raise it at the hearing on March 4, 2024. However, defendants may raise an ineffective assistance of counsel claim for the first time on direct appeal because a meritorious ineffective assistance of counsel claim is a substantial impairment of a fundamental right. See *People v. Veach*, 2017 IL 120649, ¶ 46; *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 85; *People v. Tayborn*, 2016 IL App (3d) 130594, ¶ 13.

¶ 29        We now turn to the merits of the issue on appeal—whether defendant received

ineffective assistance of counsel when his counsel failed to file a motion to suppress certain incriminating statements to police. A criminal defendant has the right to the effective assistance of counsel under the United States Constitution and the Illinois Constitution. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Our supreme court has adopted the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), for analyzing claims of ineffective assistance of counsel. *People v. Albanese*, 104 Ill. 2d 504, 526 (1984). Under this standard, "[t]o prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Domagala*, 2013 IL 113688, ¶ 36. That is, "a defendant must show that his attorney's representation fell below an objective standard of reasonableness and that a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different." *People v. Webb*, 2023 IL 128957, ¶ 21. A defendant's failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *Id.* A court may decide a claim of ineffective assistance of counsel by proceeding directly to the prejudice prong without addressing counsel's performance. *People v. Hale*, 2013 IL 113140, ¶ 17. We review claims of ineffective assistance of counsel *de novo*. *Id.*

¶ 30 There is a presumption that matters of trial strategy, including motions to suppress, are immune from claims of ineffective assistance of counsel. *People v. Nunez*, 325 Ill. App. 3d 35, 42 (2001). To overcome the presumption and prevail on a claim of ineffective assistance predicated on counsel's failure to file a motion to suppress, a defendant must demonstrate that (1) the unargued suppression motion is meritorious and (2) a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed. U.S. Const., amend. VI; *People v. Henderson*, 2013 IL 114040, ¶ 15. A "reasonable

probability" is one that is "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

¶ 31 After our careful review, we conclude defendant's claim of ineffective assistance of counsel fails because there is no reasonable probability that the outcome would have been different had the evidence been suppressed. Even if defendant's statements to the police about consuming alcohol before arriving at the truck stop were suppressed, the outcome of the trial would have been the same because there was ample additional evidence proving he committed the offense. Eyewitness testimony from Jackson and Burnett during defendant's trial placed him at the truck stop getting out of his car, swaying, stumbling, dancing, and entering the truck stop smelling like alcohol. Officers Tribley and Callahan testified to arriving on the scene after 911 calls from the eyewitnesses and observing defendant with common signs of intoxication, including slurred speech, bloodshot eyes, and an odor of alcohol. Officer Tribley further testified he found bottles of wine, one empty and the other half empty, in defendant's vehicle. Officer Gaffney testified that after defendant was taken to the police station for further investigation, he was found to have a 0.106 BAC, far exceeding the legal limit. Defendant's confession to consuming alcohol was a small part of the evidence against him at trial, and there is no reasonable probability that the outcome would have been different had defendant's statements been suppressed. Therefore, defendant is unable to show the prejudice necessary to support a claim of ineffective assistance of counsel.

¶ 32                                III. CONCLUSION

¶ 33 For the reasons stated, we affirm the trial court's judgment.

¶ 34 Affirmed.