2026 IL App (2d) 250155-U
No. 2-25-0155
Order filed March 9, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v. JAMES P. SCHLIGHT, Defendant-Appellant.

Appeal from the Circuit Court of McHenry County.
Honorable Mark R. Gerhardt, Judge, Presiding.
No. 21-CF-272

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The evidence was sufficient to prove defendant guilty of seven counts of aggravated criminal sexual abuse beyond a reasonable doubt, and the trial court properly denied defendant's motion to suppress defendant's recorded conversation with the victim's father; affirmed.

¶ 2    After a bench trial, defendant James P. Schlight was convicted of seven counts of aggravated criminal sexual abuse of a minor. He was sentenced to 60 days in jail and 3 years' sex-offender probation. On appeal, defendant primarily argues that an audio recording of his conversation with the victim's father should have been suppressed because the State's application for an overhear was "insufficient," and the assigned detective was later discharged for unrelated misconduct. Defendant also argues that the victim's testimony was not credible and that there was

insufficient evidence he touched the victim for purposes of sexual gratification or arousal. We affirm.

¶ 3    The facts of this case are essentially undisputed. The criminal investigation of defendant began in February 2021, when A.F., then age 12, wrote a letter to her parents explaining that she had been sexually abused by defendant. In the letter, she wrote that the abuse began when she was five or six. Defendant, who lived in Oregon, was well known to A.F.'s family. He was a family friend who would visit A.F.'s family and stay in a guest room at their home in Port Barrington. Defendant, who was in his 60s during the time of the charged offenses, had been like a grandparent to A.F.'s father throughout his life. Defendant would often visit and stayed with A.F.'s family for A.F.'s father's birthdays, in November, and for A.F.'s birthdays in July. Defendant would visit for days or weeks at a time. Relevant here, defendant kept children's games on his iPad for A.F. to play.

¶ 4    A.F. told her parents that she would go to the basement guest bedroom to wake defendant up; defendant would invite A.F. into the bed and, as they "cuddled," defendant would reach under her clothes and rub, touch, and squeeze her breasts and buttocks for 15 to 20 minutes each time. Shortly after A.F. disclosed the abuse, on February 23, 2021, her parents contacted the authorities. The investigation was carried out by McHenry County sheriff's deputy Detective Christopher Marvel. On February 26, 2021, A.F.'s parents brought her to the McHenry County Child Advocacy Center (CAC), and A.F. participated in a victim-sensitive interview with caseworker Anna Krause. The interview was video recorded and lasted approximately 45 minutes.

¶ 5    On March 17, 2021, Detective Marvel sought judicial authorization for the use of an eavesdropping device pursuant to 725 ILCS 5/108A-1 *et seq.* (West 2020). Judge David R. Gervais heard the application and granted it. On March 18, 2021, A.F.'s father participated in a 27-minute

phone conversation with defendant, which was recorded by Detective Marvel. During the conversation, defendant stated that "he absolutely crossed a boundary"; that A.F. would "absolutely get in the bed[,]" and "[he] would definitely give her back rubs." When A.F.'s father asked defendant if he had ever touched A.F.'s breasts, and defendant responded, "That is definitely possible. But when she's five years old, I don't think of them as breasts." Defendant also acknowledged that he touched A.F.'s buttocks stating, "It is definitely possible that when I was rubbing her back, I did touch her bottom and her chest." Defendant then added that he also touched "her legs." Defendant stated several times that he never considered the touching "sexual" or inappropriate. When A.F.'s father asked how he should treat A.F.'s claims, defendant stated, "When an accusation like this comes up, you've absolutely got to believe it." When asked about A.F. needing counseling or therapy, defendant offered to "participate in any process that helps [A.F.]" Defendant also indicated that he would write a letter to A.F. and stated, "In the letter, I need to make sure that she knows it's not her fault."

¶ 6      The State charged defendant with twelve counts of aggravated criminal sexual abuse of a minor. See 720 ILCS 5/11-1.60(c)(1) (West 2020). The dates used in the charging instrument correspond with the birthdays for A.F. and for A.F.'s father, when defendant visited the family in Port Barrington.

¶ 7      Prior to trial, pursuant to 725 ILCS 5/115-10 (West 2020), the State moved to admit the 45-minute video recording of A.F.'s interview with Krause at the CAC. After a hearing, and Krause's testimony, the trial court, Judge James S. Cowlin, found there was sufficient evidence to admit the recording at defendant's trial. Subsequently, defendant then waived a jury trial and elected to proceed to a bench trial before Judge Mark R. Gerhardt.

¶ 8 Just before the trial began, the State nol-prossed four of the charges against defendant, which narrowed the time frame of the alleged abuse from July 2014 to July 2018. The court also heard arguments on the defense's motion to suppress the recorded conversation between defendant and A.F.'s father. The court denied the motion, which we will discuss in greater detail below.

¶ 9 At trial, A.F. was the State's first witness. A.F. testified that when she was 12, she learned about "bad touching" in school. A.F. spoke to a friend about it and realized that her contact with defendant had been sexually abusive since she was five years old. A.F. then wrote a letter to her parents and was interviewed by Krause at the CAC. A.F. testified that defendant touched her the same way practically every morning during his visit, and that his touching "never changed." On cross-examination, A.F. explained that she did not disclose the abuse sooner because she was in denial that it occurred and because defendant was such a close friend of the family.

¶ 10 Both A.F.'s parents testified about the length of their relationship with defendant. Krause, the CAC caseworker also testified. The State moved to admit the 45-minute video recording of the CAC interview, and the 27-minute audio recording of the overhear of defendant's phone conversation with A.F.'s father.

¶ 11 The defense presented the testimony of two witnesses who knew defendant through his religious community as well as defendant's niece, all of whom testified that they did not believe the allegations against defendant. None of the witnesses had visited or been to A.F.'s family's home in Port Barrington. Defendant testified that he was 69 years old, had an MBA, and worked in software development but was now retired. Defendant testified that he was friends with A.F.'s paternal grandmother and has known A.F.'s father since he was born in 1978. Defendant testified that A.F.'s father was like a son to him.

¶ 12    Defendant testified that one time when A.F. was seven, she woke him up and was giggling. Defendant was tired from a long day of travel. A.F. then climbed into bed with defendant and he rubbed her back so she would sleep and he could continue to sleep. Defendant denied touching A.F.'s chest or buttocks in a sexual manner. Because he kept "meticulous" records, defendant stated that he spent 192 days total at the Port Barrington home between 2013 and 2018. Defendant stated that A.F. had only woken him up "three or four times at the outside" beginning when she was seven. After she turned eight, defendant testified A.F. had her own iPad so she had no reason to wake him up. Defendant testified that he did not mean to imply his guilt during his phone conversation with A.F.'s father; rather, according to defendant, he was trying to console A.F.'s father, not apologize to him.

¶ 13    After closing arguments, the trial court stated that it found A.F. credible and entered guilty verdicts on seven of the eight charges. Defendant's post-trial motion was denied. As noted above, the court sentenced defendant to 60 days' incarceration on each count to run concurrently, and 3 years' sex-offender probation. Defendant timely appealed.

¶ 14    We begin with defendant's contention that there was insufficient evidence of his guilt. "Where a criminal conviction is challenged based on insufficient evidence, a reviewing court, considering all of the evidence in the light most favorable to the prosecution, must determine whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). We will not substitute our judgment for the trier of fact on issues involving the weight of evidence, the credibility of witnesses, or on reasonable inferences drawn from the evidence. *Siguenza-Brito*, 235 Ill. 2d at 224-228.

¶ 15    A person commits aggravated criminal sexual abuse if that person is over the age of 17 and commits an act of "sexual conduct" with a victim under the age of 13. 720 ILCS 5/11-1.60(c)(1)(i) (West 2020). Relevant here, statutory authority defines sexual conduct in part as "any knowing touching or fondling by *** the accused, either directly or through clothing, of *** any part of the body of a child under 13 years of age, *** for the purpose of sexual gratification or arousal of the victim or the accused." 720 ILCS 5/11-0.1 (West 2020).

¶ 16    Defendant does not dispute the age element; he was between 59 and 63 years old when these offenses occurred, while A.F. was between the ages of six and ten. There is also no disputing defendant's identity, as he had been a close friend of the family for many years. Rather, defendant asserts that there was insufficient evidence that he touched the victim for the purpose of either his or her "sexual gratification or arousal ***." We disagree.

¶ 17    As the State rightly points out, a defendant's intent regarding gratification or arousal may be inferred solely from the alleged act itself. See, *e.g.*, *In re M.G.*, 2024 IL App (1st) 232106, ¶ 31. For example, in *People v. Goebel*, 161 Ill. App. 3d 113 (1987), we held that where an adult male touched a nine-year-old victim's breast, it was "thoroughly reasonable to infer from such touching *** that defendant intended to gratify or arouse himself sexually." *Id.* at 125. So too here. Moreover, as the State points out, there was additional circumstantial evidence, including the fact that defendant would perform these acts while he and A.F. were alone, where she was isolated, in his guestroom bed. As in *Goebel*, it was "thoroughly reasonable" for the trial court to come to the same conclusion here.

¶ 18    Defendant asserts that the State's evidence was somehow lacking because A.F. did not testify that defendant's "breathing ever changed during these events or that he ever had an erection or ever masturbated or ejaculated" as he laid in the bed with A.F. According to defendant, it is also

significant that there was no evidence he threatened A.F. to remain quiet about the abuse, or that he "groomed" her. None of those observations align with the criteria laid out in the statutory authority or case law. As we said in *In re Matthew K.*, 355 Ill. App. 3d 652 (2005), "the issue of intent of sexual gratification *** must be determined on a case-by-case basis," and there is no bright-line test. *Id.* at 656-57. True, some of the evidence defendant suggests would have been *more* definitive on the issue of gratification or arousal, but they are by no means prerequisites to sustain defendant's convictions for aggravated criminal sexual abuse of a minor. "The trier of fact need not *** be satisfied beyond a reasonable doubt as to each link in the chain of circumstances. It is sufficient if all of the evidence taken together satisfies the trier of fact beyond a reasonable doubt of the defendant's guilt." *People v. Galarza*, 2023 IL 127678, ¶ 27. Like the trial court, we determine that the trial evidence was sufficiently conclusive on the issue of defendant's sexual gratification.

¶ 19    Contrary to defendant's argument, there is also nothing inherently improbable about A.F. disclosing the abuse after she had turned twelve. It is not unreasonable to believe that a young girl would be in denial or suppress such a realization concerning sexual abuse perpetrated by a close family friend, especially one who was practically considered a member of the family. A.F.'s explanations regarding her feelings of guilt, confusion, shock, and shame—both at trial and in the CAC interview—were deemed highly credible by the judge who saw her testify. We will not reject the trial court's findings merely because defendant refuses to credit them.

¶ 20    "[I]n a bench trial, it is for the trial judge, sitting as the trier of fact, to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence." *Siguenza-Brito*, 235 Ill. 2d at 228. "It remains the firm holding of [our supreme] court that the testimony of a single witness, if positive and credible, is

sufficient to convict, even though it is contradicted by the defendant." *Id.* A.F.'s testimony was positive about the acts that occurred, and clear as to the identity of the perpetrator. Again, we will not substitute our judgment for the trier of fact unless its conclusions were completely unreasonable, and we find nothing unreasonable about the trial court's inferences regarding the defendant's intent. Accordingly, we reject defendant's argument, and we determine that sufficient evidence proved his guilt.

¶ 21 We next address the issue that is the primary focus of defendant's brief: the admission of the March 18, 2021 phone-call recording. The State argues that defendant forfeited this issue by not objecting at trial when the exhibit was admitted, but that is incorrect. Because the issue was the subject of a pre-trial motion, a contemporaneous trial objection was not required because the issue had been considered previously. *People v. Denson*, 2014 IL 116231, ¶ 21. In addition, we reject the State's suggestion that we dismiss the issue as invited error, or estop defendant's argument altogether, merely because defense counsel offered a generic "[n]o objection" when the recording was admitted at trial. Because the claim was raised in a pre-trial motion and a post-trial motion as well, it is properly before us. See *id*. ¶ 24 ("defendant did all that our rules require to preserve that issue for review"). That said, when we consider the merits, we find defendant's arguments on this issue unpersuasive.

¶ 22 In November 2024, the State disclosed to defendant that Detective Marvel had been the subject of two misconduct investigations. The first concerned a domestic incident and the unlawful discharge of a firearm in September 2023. The second investigation involved a series of incidents between September 2023 and October 2023, in which Detective Marvel used advance funds to acquire cocaine for personal use, conspired to engage in prostitution, solicited a sex act, allowed a civilian to drive his official vehicle from Harvard to Woodstock because he was too intoxicated to

do so, and attempted to defraud a drug and alcohol screening test. These events ultimately led to Marvel's termination as a law enforcement officer; he pled guilty to two counts of official misconduct and was sentenced to two years' probation.

¶ 23 In his motion to suppress the March 18, 2021, recorded phone conversation, defendant largely reiterated the foregoing information about Marvel and asserted that there were substantial defects in the overhear application Marvel presented to Judge Gervais. For instance, defendant noted that the overhear application was largely based on the victim's "hearsay"; that it failed to set forth reasonable cause to believe that A.F.'s father would be able to elicit statements from defendant concerning A.F.'s abuse; that Marvel's information was "stale" and he "displayed no investigative rigor" as the abuse had ended almost two years before the investigation began; that the overhear application listed A.F.'s birthday as having been in 2009 when it was actually 2008; that the application alleged the overhear sought to elicit statements concerning aggravated criminal sexual abuse as well as predatory criminal sexual assault, even though A.F. stated in her CAC interview that no sexual penetration had occurred; and that the overhear order was erroneously granted for 33 days, in violation of 725 ILCS 5/108A-5(3)(b) (West 2020), which only permits judicial authorization for 30 days at a time. Defendant further argued that the overhear application was so deficient that no reasonable judge would have granted it, and that the State could not have relied on the issuing judge's order in good faith. While our review is *de novo* (*People v. Calgaro*, 348 Ill. App. 3d 297, 300 (2004), we agree with the trial court that these assertions are unpersuasive.

¶ 24 Defendant is correct that there are several defects in the overhear application and the authorization order. But while the eavesdropping statute is strictly construed, not all violations of article 108A require that the recorded evidence must be suppressed. *People v. Nieves*, 92 Ill. 2d

452, 458 (1982); *People v. Cunningham*, 2012 IL App (3d) 100013, ¶ 22; *Calgaro*, 348 Ill. App. 3d at 300. "Where the purpose and reasoning behind requiring judicial authorization were satisfied and the State gained no tactical advantage" from the identified defect, "[a] technical defect in the State's compliance with the statutory requirements does not require suppression." *People v. Stewart*, 343 Ill. App. 3d 963, 976 (2003) (citing *People v. Manuel*, 294 Ill. App. 3d. 113, 123 (1997)). We are also mindful that "[a]n application to use an eavesdropping device should be viewed in a commonsense manner and the issuing judge's conclusions that reasonable cause exists should be given great deference when reviewed by subsequent judges." *Calgaro*, 348 Ill. App. 3d at 301. " 'Reasonable cause' as used in the eavesdropping statute is synonymous with 'probable cause' and is established when the totality of the circumstances is sufficient to warrant the belief by a reasonable person that an offense has been, is being, or will be committed." *Id*. (citing *People v. White*, 209 Ill. App. 3d 844, 876 (1991)).

¶ 25    We can dispense with defendant's points concerning the information in Detective Marvel's affidavit and application, as none of the mistaken information was material to the issuing judge's determination of reasonable cause. For example, misstating A.F.'s birth year was immaterial, as she was between the ages of five and ten when the abuse occurred. If she had been between the ages of four and nine, the alleged acts would have been no less criminal. Similarly, when viewed in a "commonsense manner" (*id*.), the application was clear that A.F.'s father intended to speak to defendant over the phone about the past abuse A.F. had recently reported, regardless of the passage of time; thus, there was "reasonable cause for believing that particular conversations concerning that felony will be obtained." 725 ILCS 5/108A-4 (West 2020).

¶ 26    We understand defendant's point that the application identified "predatory criminal sexual assault" as a possible crime to be investigated, but from an investigative standpoint, in 2021, that

- 10 -

was not unreasonable either. We note that belated disclosures of additional sex acts are not uncommon with victims in sex-crimes investigations, especially when the victim is a child. At any rate, the inclusion of a possible "sexual penetration" offense in the application was immaterial. If one were to excise that particular crime from the document, the application still would state reasonable cause to investigate the felony of criminal sexual abuse of a child or aggravated criminal sexual abuse of a child. As for defendant's point that the application contained hearsay, there is no statutory requirement that only occurrence witnesses may petition for judicial authorization to use an eavesdropping device. Nearly all investigative applications—for search warrants, for overhears, for electronic surveillance, for records, etc.—rely on some out-of-court statements if only because the matter has not yet been brought *in* court. When reviewing such investigative requests, judges are required to assess the credibility of the affiant, and to examine the factual details supporting the application. The suggestion that hearsay cannot be used in an article 108A application simply has no basis in law or logic.

¶ 27　Next, while we agree with defendant that the order incorrectly authorized a 33-day overhear, the mistake was trivial at best. Marvel presented the application on March 17, 2021, and the only conversation recorded pursuant to the order occurred the following day, on March 18, 2021. "There is no suggestion in the record that any unauthorized, illegal eavesdropping actually took place" (*People v. Pitchford*, 115 Ill. App. 3d 164, 169 (1983)) during the disputed three-day period here in April 2021. Further still, there is no suggestion that this mistake was intentional, rather than accidental, or any assertion that the error harmed defendant in any way. Such "technical defects which are purely inadvertent, non-prejudicial[,] and do not impair the legislative intent embodied in the statute" (*People v. Wrestler*, 121 Ill. App. 3d 147, 154 (1984)) plainly do not merit suppression.

- 11 -

¶ 28 Finally, there is defendant's generalized complaint about Marvel and his subsequent misconduct. From a suppression standpoint, that, too, is a nonevent. Nothing Marvel did in September 2023 could possibly have impacted the issuing magistrate's consideration of the article 108A application two-and-a-half years earlier in March 2021. Marvel's subsequent misdeeds were significant, but they simply were not relevant to defendant's case. The overhear application presented sufficient information to justify an order for the use of an eavesdropping device, and the trial court properly denied defendant's motion to suppress it.

¶ 29 Affirmed.